UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| [UNDER SEAL],<br><br>                Plaintiff(s),<br><br>vs.<br><br>[UNDER SEAL],<br><br>                Defendant(s). | Case No.<br>3:23 cv 21624-TKW-HTC<br><br>**COMPLAINT**<br><br>**FILED *IN CAMERA* & UNDER SEAL<br>PURSUANT TO 31 U.S.C. § 3730**<br><br>**NOT FOR PUBLIC<br>DISCLOSURE<br>DO NOT PLACE IN PRESS BOX<br>DO NOT ENTER ON PACER** |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHRISTOPHER WOLFE, DO,<br><br>Plaintiff/Relator,<br><br>v.<br><br>WILLIAM HENGHOLD, MD; LUKE HYDER, MD; HENGHOLD SURGERY CENTER, LLC d/b/a HENGHOLD DERMATOLOGY; FOREFRONT DERMATOLOGY,<br><br>Defendants. | Case No.<br>3:23 cv 21624-TKW-HTC<br><br>**COMPLAINT**<br><br>**FILED *IN CAMERA* & UNDER SEAL**<br>**PURSUANT TO 31 U.S.C. § 3730**<br><br>**NOT FOR PUBLIC DISCLOSURE**<br>**DO NOT PLACE IN PRESS BOX**<br>**DO NOT ENTER ON PACER** |

## *QUI TAM* COMPLAINT

Relator Christopher Wolfe, DO, on behalf of himself and the United States of America, alleges and claims against Defendants as follows:

### INTRODUCTION

1. Dr. Wolfe began his career in medicine as a medic (1997-2001) and then a physician's assistant (2003-2005) in the United States Army, serving a tour in Operation Iraqi Freedom. Afterward, Dr. Wolfe graduated first in his class from medical school and completed his dermatology residency and surgical fellowship at

2

Florida State University. In 2021, Dr. Wolfe began employment at Henghold Dermatology ("Henghold") in Pensacola.

2. Many of the patients at Henghold are on Medicare.

3. Within just a few months at Henghold, Dr. Wolfe came to suspect that his partners in the practice, Dr. William Henghold and Dr. Luke Hyder, were fraudulently billing Medicare using codes for surgeries that were more complex (and more highly reimbursed) than the actual surgeries they were performing. Two things piqued Dr. Wolfe's suspicion. *First*, Henghold's nurses asked him (again and again) if the linear repairs involving an "M-plasty" (a kind of linear repair) that Dr. Wolfe performed should be billed as "flap" (instead of linear) repairs, and Dr. Wolfe repeatedly had to correct them. The reimbursement amount for flap repairs is nearly double that for linear repairs.

4. *Second*, Dr. Hyder asked Dr. Wolfe how he billed "M-plasty" repairs. The question was suspicious because Dr. Hyder is an experienced dermatologist and it is obvious how to correctly code an M-plasty: as a linear repair. The Mohs surgeons at Henghold perform thousands of these surgeries each year.

5. Dr. Wolfe initially believed that Dr. Hyder and Dr. Henghold's upcoded billing must have been one-off exceptions. But in January of 2023, during a routine review of the procedures performed by his medical partners, Dr. Wolfe discovered

3

that Dr. Henghold upcoded between forty and sixty surgeries per month and Dr. Hyder had upcoded between twenty and thirty surgeries per month.

6. Dr. Wolfe then investigated Dr. Hyder's and Dr. Henghold's files more thoroughly and compiled a log of the surgeries for which the doctors had billed fraudulent codes. The results were uniform and alarming. Over the course of a decade, Dr. Henghold and Dr. Hyder have used fraudulent codes to receive millions of dollars in unearned reimbursements.

7. Dr. Hyder and Dr. Henghold defrauded Medicare primarily in two ways: (1) they routinely bill linear repair surgeries as if those surgeries were "flaps," which significantly increases the reimbursement they receive; and (2) they routinely bill flap surgeries as if they involved a much larger surface area of skin, which more than doubles the reimbursement they receive.

8. In an attempt to stop their fraudulent upcoding, Dr. Wolfe confidentially reported Dr. Hyder and Dr. Henghold's fraudulent practices to Forefront Dermatology (which acquired Henghold Dermatology before 2021). Forefront did not respond to Dr. Wolfe, but soon afterward, Dr. Henghold confronted Dr. Wolfe about Dr. Wolfe's report.

9. Around April of 2023, when Dr. Wolfe's contract with Henghold was to be renewed, Dr. Hyder blocked the renewal.

10. In August of 2023, Forefront Dermatology placed Dr. Wolfe on administrative leave pending an investigation, which constructively terminated his employment. Forefront then presented Dr. Wolfe with a severance and nondisclosure agreement.

11. This is a *qui tam* case brought under the False Claims Act to recover money paid by Medicare to Defendants on fraudulent claims for payment submitted by Defendants. Defendants deliberately charged for surgeries that they had not performed, broke federal laws for Medicare reimbursement, and submitted millions of dollars in false claims for payment to Medicare.

## JURISDICTION AND VENUE

12. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "False Claims Act"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Jurisdiction is also authorized under 31 U.S.C. § 3732(a).

13. Venue lies in this judicial district pursuant to 31 U.S.C. § 3732(a) because Defendants qualify to do business in Florida, transact substantial business in Florida, transact substantial business in this judicial district, and can be found here. Additionally, and as described herein, Defendant committed within this judicial district acts proscribed by 31 U.S.C. § 3729. Specifically, Defendants submitted and caused to be submitted within this judicial district false claims to Medicare, with the fraudulent use of patient codes as outlined herein.

## PARTIES

14. Relator Christopher Wolfe, DO, is a physician in Pensacola specializing in Mohs micrographic surgery. Dr. Wolfe worked at Henghold Dermatology and Henghold Ambulatory Surgery Center, LLC d/b/a Henghold Dermatology since 2021.

15. Defendant Henghold Surgery Center, LLC is a Florida limited liability company doing business as Henghold Dermatology ("Henghold"). Henghold is registered to do business in Florida and has a principal place of business at 530-A Fontaine Street in Pensacola, FL. Henghold's managing director and registered agent is Defendant William B. Henghold. Henghold can be served at its principal place of business.

16. Defendant Forefront Dermatology, S.C., Corp. ("Forefront") is a Wisconsin corporation registered to do business in Florida. Forefront may be served c/o CT Corporation System at 1200 S Pine Island Rd, Plantation, FL 33324. Forefront acquired Henghold sometime before 2021.

17. Defendant William B. Henghold, M.D., is a physician in Pensacola specializing in Mohs micrographic surgery.

18. Defendant Luke Hyder, M.D., is a physician in Pensacola specializing in Mohs micrographic surgery.

## DISCLOSURE

19. Prior to filing this Complaint, Relator voluntarily disclosed to the United States the information upon which this action is based. To the extent that any public disclosure has taken place as defined by 31 U.S.C. §3739(e)(4)(A), Relator is the original source of the information for purposes of that section. Alternatively, Relator has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions, and Relator voluntarily provided that information to the Government before filing this Complaint. Relator is serving contemporaneously herewith a statement of the material evidence in their possession upon which his claims are based.

## RELEVANT RULES AND REGULATIONS

### The United States False Claims Act

20. The FCA provides, in pertinent part, that a person is liable to the United States who: knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay money to the government; knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay money or property to the

government; or conspires to commit any of the above violations. 31 U.S.C. § 3729(a)(1).

21. Liable parties must pay the government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus three times the amount of damages which the Government sustains. *Id.* § 3729(a)(1)(G).

**The Medicare Program**

22. Through the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, the United States provides health insurance coverage for eligible citizens. The United States Department of Health and Human Services, specifically the Center for Medicare and Medicaid Services ("CMS"), oversees the administration of Medicare.

23. Medicare pays "claims," which are requests by a health care provider to be reimbursed (paid) for services provided to Medicare recipients. A claim contains a variety of information, including where the medical service was provided, the dollar amount being billed to Medicare, and an identification number for the health care provider.

24. A claim also contains a code for the procedure or service performed. Those codes are called the "CPT codes," which stands for Current Procedural Terminology codes. CPT codes are a national uniform coding structure created for

use in billing and overseen by the American Medical Association. They are used by all health insurance companies and by Medicare and Medicaid. A code represents at least two things: the procedure or service performed and the level of complexity involved in it.

25. Generally, for any given category of procedure, the more complex the procedure, the higher the number used for its code. In turn, a higher CPT code generally receives more reimbursement amount from Medicare.

26. Fraud can occur when a physician intentionally uses a CPT code that does not describe the services the physician actually provided in order to intentionally generate larger, unearned Medicare reimbursements. This type of fraud is called "upcoding."

27. The CPT Manual lists five types of surgical closures: simple, intermediate, complex, adjacent tissue transfer, and graft. Measurement of repaired wounds is reported in centimeters; higher centimeter repairs generate higher coding levels.

**CPT Coding: Linear (13xxx) vs. Flap (14xxx)**

28. **Linear** repairs are categorized as either simple, intermediate, or complex (they do not involve transfer of adjacent tissue or graft of adjacent tissue). CPT Code 13101 is used for complex linear repairs that have a measurement of between 2.6 and 7.5 centimeters. For each additional 5 centimeters, the code is

9

modified (for example, a complex linear repair that is 17 cm in length would require CPT code 13101 and 13102 + 2).

29.     **Flap** repairs involve adjacent tissue transfer (a/k/a "adj. tissue trnsf."). Flap repairs are coded using the CPT code set 14000-14302.

30.     Medicare pays less for linear repairs than for flap repairs. For example, the typical difference in total reimbursement between linear and flap repairs in an ambulatory surgery center is more than $1,500:

$1096.15 for a linear repair vs.

$2744.88 for a flap repair.

31.     It is routine and simple for a dermatologist to determine whether a repair is linear or flap. Indeed, even a lay person can often tell by looking at a photograph of the repair whether it is linear or flap.

**CPT Coding: Flap Repair > 30 cm squared (14301)**

32.     Several CPT codes, including 14060, are used for flap repairs involving a surface area of less than thirty centimeters

33.     For flap repairs involving a surface area greater than thirty centimeters, CPT Code 14301 is used. It is very rare that a flap repair on a nose will involve a surface area greater than thirty centimeters.

34.     Medicare pays more for these large flap repairs than for smaller flap repairs. For example, a typical difference in total reimbursement is nearly $1,000:

10

$1477.54 for a small flap repair vs.

$2409.31 for a flap repair > 30 cm.

35. It is routine and simple for a dermatologist to determine whether a flap involves a small area or an area of more than 30 centimeters. Indeed, even a lay person can often tell the difference by comparing photographs of the repairs.

## DEFENDANTS' FRAUDULENT BILLING PRACTICES

### Fraudulent Billing By Dr. Henghold

36. Dr. Henghold has been defrauding Medicare since at least 2013 by fraudulently billing linear repairs that he performed as if they were flap repairs and by fraudulently billing small flap repairs he performed as if they were flap repairs involving greater than thirty centimeters squared.

37. Four particular months are a representative sample of the fraud that Dr. Henghold has consistently perpetuated over the course of a decade. In the month of September 2013, Dr. Henghold fraudulently upcoded sixty surgeries that he performed. In September 2018, Dr. Henghold fraudulently upcoded forty surgeries. In October 2018, Dr. Henghold fraudulently upcoded fifty-four surgeries. And, working part-time, in November 2022, Dr. Henghold fraudulently upcoded at least twenty-four surgeries.

38. In each of these representative months, Dr. Henghold received tens of thousands of dollars for surgeries that he had fraudulently upcoded.

11

39. Relator has or will prepare and submit to the Government a document showing specific examples of Dr. Henghold's fraudulent billing practices.

**Fraudulent Billing by Dr. Hyder**

40. Dr. Hyder has been defrauding Medicare since at least 2019 by fraudulently billing linear repairs that he performed as if they were flap repairs and by fraudulently billing small flap repairs he performed as if they were flap repairs involving greater than thirty centimeters squared.

41. Since 2019, on average, Dr. Hyder has fraudulently upcoded approximately twenty to thirty surgeries per month.

42. Relator has or will prepare and submit to the Government a document showing specific examples of Dr. Hyder's fraudulent billing practices.

**Defendants' Culpability**

43. Defendants acted recklessly and/or intentionally when they fraudulently billed for linear and flap procedures.

44. Defendants' reckless and/or intentional culpability can be reasonably inferred from several circumstances: (a) the difference between linear and flap surgeries, and between small and large flap surgeries, is simple to determine; (b) Defendants are experienced dermatological surgeons, a field that only capable experts are permitted to enter; (c) the difference between reimbursement is significant, so fraudulently upcoding is extremely profitable; (d) when Dr. Wolfe

began practicing with Defendants, they questioned him about how he billed procedures that are well-known to be linear surgeries, from which can reasonably be inferred that they wanted him to bill these well-known linear surgeries as if they were flap surgeries; (e) after Dr. Wolfe reported the defendant physicians' fraudulent conduct to Defendant Forefront, they retaliated against him by confronting him about it, blocking his contract renewal, and constructively terminating his employment.

## COUNT ONE
## PRESENTING OR CAUSING TO BE PRESENTED FALSE CLAIMS UNDER 31 U.S.C. § 3729

45. Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

46. By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – presented or caused to be presented false or fraudulent claims to the United States for payment or approval, as follows:

a) Defendants fraudulently billed linear surgeries as flap surgeries;

b) Defendants fraudulently billed small flap surgeries as large flap surgeries;

47. The United States paid the false claims described herein.

48. Defendants' fraudulent actions, as described *supra*, are part of a widespread, systematic pattern and practice of knowingly submitting or causing to be submitted false claims to the United States through fraudulent use of codes and fraudulent billing of the United States through Medicare or Medicaid.

49. Defendants' fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendants and others by the United States through Medicare and Medicaid for such false or fraudulent claims.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States, and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

### COUNT TWO
### MAKING OR USING FALSE STATEMENTS OR RECORDS MATERIAL TO A FALSE CLAIM UNDER 31 U.S.C. § 3729

50. Relator adopts and incorporates the factual allegations contained in the previous paragraphs (except those in Count One) as though fully set forth herein.

51. By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made

or used, false records or statements material to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United States in that Defendants fraudulently used the coding system and other false records intended to support its fraudulent billing to the United States, all in violation of federal statutes and regulations.

52. The false records or statements described herein were material to the false claims submitted, or caused to be submitted, by Defendants to the United States.

53. In reliance upon Defendants' false statements and records, the United States paid false claims that it would not have paid if not for those false statements and records.

54. Defendants' fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendants and others by the United States for such false or fraudulent claims.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States, and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

## COUNT THREE
## "REVERSE FALSE CLAIMS" UNDER 31 U.S.C. § 3729(a)(1)(G)

55. Relator adopts and incorporates the factual allegations contained in the previous paragraphs (except those in previous counts) as though fully set forth herein.

56. By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the United States.

57. Defendants knew that it had received inflated Medicare payments based on inaccurate and falsified coding, yet Defendant took no action to satisfy its obligations to the United States to repay or refund those payments and instead retained the funds and continued to bill the United States.

58. As a result of Defendants' fraudulent conduct, the United States has suffered damage in the amount of funds that belong to the United States but are improperly retained by Defendants.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relators may be entitled.

## COUNT FOUR
## CONSPIRACY UNDER 31 U.S.C. § 3729(a)(3)

59. Relator adopts and incorporates the factual allegations contained in the previous paragraphs as though fully set forth herein. The previous counts describe the fraud for which Defendant are charged in this count with conspiracy to perpetuate.

60. Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval through the fraudulent use of reimbursement codes, and presented or caused to be presented false claims to the United States through Medicare or Medicaid for payment of same.

61. The United States paid Defendants for such false claims.

62. Defendants, in concert with each other and their agents, employees, subsidiaries, and other institutions did agree to submit such false claims to the United States.

63. Defendants and their principals, agents, and employees acted, by and through the conduct described *supra*, with the intent to defraud the United States by submitting false claims for payment to the United States through Medicare or Medicaid.

64. Defendants' fraudulent actions, together with the fraudulent actions of its principals, agents and employees, have resulted in damage to the United States equal to the amount paid by the United States to Defendants and others because of Defendants' fraudulent claims.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, different, or further relief to which Relator may be entitled.

## COUNT FIVE
## RETALIATION UNDER 31 U.S.C. 3730(h)

65. Relator adopts and incorporates the factual allegations contained in the previous paragraphs (except those in previous counts) as though fully set forth herein.

66. In or around April of 2023, Dr. Henghold and Dr. Hyder learned that Dr. Wolfe internally reported their violations of the False Claims Act to Forefront in an effort to stop those violations.

67. Shortly thereafter, in or around April of 2023, Dr. Hyder retaliated against Dr. Wolfe when Dr. Hyder blocked the renewal of Dr. Wolfe's employment contract.

68. Shortly thereafter, Dr. Henghold told Dr. Wolfe that he had learned from the president of Forefront that Dr. Wolfe had reported his fraudulent activities. Dr. Henghold stated that Dr. Wolfe would "regret it" if he reported those activities to Medicare. Dr. Henghold also threatened to take further retaliatory actions against Dr. Wolfe.

69. In August of 2023, Dr. Henghold caused Forefront to suspend and constructively discharge Dr. Wolfe because of his efforts to stop violations of the False Claims Act.

WHEREFORE, Relator demands judgment in his favor and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by law, attorneys' fees, costs, interest, and such other, different, or further relief to which Relator may be entitled.

Dated: -8/11/2023

Taylor, Warren, Weidner & Hancock, PA
1700 W. Main Street, Suite 100
Pensacola, FL 325202
(850) 438-4899

/S/ Keith W. Weidner
_____

Keith W. Weidner
Fla Bar No.:0655651
kweidner@twwlawfirm.com
Secondary: salexander@twwlawfirm.com

J. Phillip Warren
Fla Bar No.: 0662143
pwarren@twwlawfirm.com

***Attorneys for Plaintiff / Relator***

/S/ Jacob M. Tubbs
_____

Oscar M. Price, IV (*pro hac vice forthcoming*)
oscar@pricearmstrong.com
Jacob M. Tubbs (*pro hac vice forthcoming*)
jacob@pricearmstrong.com
T. Graham Cotten (*pro hac vice forthcoming*)
graham@pricearmstrong.com
PRICE ARMSTRONG, LLC
1919 Cahaba Road
Birmingham, AL 35223
(205) 208-9588

***Primary Attorneys for Plaintiff / Relator***